Per Curiam.
 

 The jury have found that the land in contest, is included in the survey of Bradley; the only question is, whether Bradley or those who claim under him, can hold the land under the entry. It appears that M’Crory not only surveyed, but that he got his grant before Bradley surveyed.
 

 This we believe does not deprive Bradley of any advantage which the law gave him on account of his having the oldest entry. The surveyor is directed by law, to survey the oldest entry first, and if he does actually survey a younger entry before an older, it should not place the first enterer in a worse situation.
 

 Bradley’s survey was bounded by older claims; by Buckhannan’s, Todd’s, & M’Murray’s. His runing into Moor’s made no difference to M’Crory; for it does not appear that he got his quantity, including the interference with Moore. Whatever distance the surveyor might think proper to run Bradley’s claim to the west of the spring, did not injure M’Crory—he is therefore not competent to an objection on
 
 *12
 
 this account. The most proper point of view, in which to consider this question as it respects the objections of M’Crory, is whether Bradley could include this land, by runing an oblong, east from his spring, barely taking it in—he certainly might, for it is but 450 poles from the spring to the river. This is the most favorable point of view, in which it can be considered, for the claim of M’Crory. An oblong would have included it, and inasmuch as the part of Bradley’s claim, which lies to the west of the spring does not interfere with M’Crory, his claim can derive no validity from this source.
 
 *
 

 The defendant must convey to the plaintiff.
 

 *
 

 Note. The defendants produced John Buckhannon, the surveyor of both Bradley’s and M’Crory’s claims, to prove what he intended in making Bradley’s survey,
 

 Sed per curiam.-The survey is matter of record, which, speaks for itself. It would be of dangerous consequence to admit the proof now offered. We cannot admit the surveyor to explain his own act, so as to contradict the rcord.
 

 In this case it was contended on the part of the defendants, that agreeably to the decision at Jonesborough, some years ago, the bill ought to be dismissed, as the plaintiff had his remedy at law.
 

 Sed per curiam. Before the passage of the act of 1786, C. 20, the plaintiff had his remedy in equity, and it is not taken away by this act, He has an election to bring his suit at law or in equity.
 

 The principle of this case does not accord with the decisions in Kentucky, as laid down in Hughs’ and Harden’s Reports, but is conformable to the verdicts of juries acquiesced in by our courts, and is agreable to the manner of running out lands by surveyors in this State, previous to the compact with N. Carolina, in 1803. This decision is also conformable to the practical construction put on the land laws by the citizens of North-Carolina, as appears from the following certificate of Col. Christmas, the principal surveyor of the first district, who was appointed a surveyor in N. Carolina immediately after the passage of the Land-Law, of 1777, and acted as such, within the limits of what is now three counties in that state ; he continued in the exercise of that office, from the year 1778, till about the year 1793. His observations are,
 
 *13
 
 that" according to the usage of citizens of N. Carolina, from the year 1777 ,under their entry laws, an entry calling to adjoin some notorious line, or for some notorious point to be included, was considered as special enough. That agreeable to the usage of surveyors in N. Carolina, from the year 1777, they surveyed the oldest entries first, when they interfered with or lay contiguous to younger ones-That according to said usage, when they surveyed an entry having a special call, and not restrictive as to boundaries, and could not survey it in a square or oblong on account of older claims, they bounded their surveys on such older claims in any form to the cardinal points ; taking care to embrace the quantity of land called for hi the entry-It was also the common usage among surveyors in N. Corolina, to survey the oldest entries first, to include the quantities called for in the entries by running into any contiguous lands which were not appropriated previously to the entries to be surveyed ; and in making such surveys the square or oblong form was departed from when constrained to do so by older claims-In making surveys in North Carolina on younger entries, it was also the usage of surveyors from the year 1777, to run out such younger entries so as not to interfere with an older entry, or first survey, let the calls of the younger entries be what they might-It was also common for surveyors to call on the enterer to shew the land entered, and to permit him to point out such beginning, as he desired taking care however to comply with the specialties called for in the entry. Wm. CHRISTMAS.”
 

 “I surveyed in several counties in the State of North-Carolina, from the year 1794, until the year 1804, and in making surveys by virtue of entries, I was governed generally by the principles above stated. JOHN STROTHER.”
 

 As to the effect of usage and precedents, in law vide 16, Vin. Ab. tit. precedents ; Jenk. Cent 162. pl. 9; 1. Call.
 
 *14
 
 210 ; Maryland Reports 67. 86. 131. 212 ; 2, Massa. Rep. 477 ; and the opinion of Ch. J. Parker, in 1. P. Williams, 399, 452. The rule laid down by Edwards, Ch. J. in delivering the opinion of the court of appeals in Kentucky, appears to be the correct one, “ that the principles of the statute law, and not the general principles of Equity, must govern courts of Equity in deciding on land claims. Decisions of courts of Equity, must have for their basis the meaning and spirit of the land laws. See Hardin’s Reports 472.