STATE OF TENNESSEE, *ex rel.*, etc., *v.* WHITE'S CREEK TURNPIKE COMPANY and C. W. NANCE.

April Term, 1876.

BILL TO DECLARE THE FORFEITURE OF A CHARTER OF INCORPORATION MUST BE FILED BY THE ATTORNEY-GENERAL. — The attorney-general, as the representative of the state, is a necessary party to a bill filed in the name

of the state, on the relation of third persons, to have the franchises of a corporation declared forfeited for a failure to comply with the provisions of its charter.

*J. T. Brown*, for complainant.
*T. H. Malone*, for defendants.

THE CHANCELLOR: — Bill filed March 28, 1876, in the name of the state of Tennessee, on the information of seventeen citizens of the county of Davidson, living along the White's Creek Turnpike Road, and compelled to travel on it in going to and from Nashville, to have the franchises of the corporation declared forfeited for a failure to keep the road in the condition required by its charter. The bill is signed by private counsel, not by the attorney-general of the state, nor does it purport to be by him or his authority in any way. The defendants demur upon the ground that the bill is the bill of the relators, not of the state of Tennessee, and that a bill cannot be maintained for the forfeiture of a charter granted by the Legislature except by the state.

By the common law, a private corporation created by the Legislature may lose its franchises by a misuser of them, and the failure to comply with the conditions of its creation, wilfully, would be ground for forfeiture. The mode by which the government could resume the franchises granted was through a judicial judgment upon a *quo warranto* to ascertain and enforce the forfeiture. The ancient writ of *quo warranto* was a high prerogative writ, in the nature of a writ of right for the king, returnable to a court of law, and the proceedings were of a criminal form. The modern information in the nature of a *quo warranto*, regulated by various statutes down to and including 9 Anne, c. 20, is an information criminal in form, though in substance a civil proceeding, presented to a court of competent jurisdiction by the public prosecutor for the purpose sought. Although it may be brought upon the relation of

private citizens, and for the determination of purely civil rights, the public prosecutor, or other designated officer of the government, is a necessary party; and by the express terms of the statute of Anne, and the uniform rulings of the court, it can only be filed, when it is upon the relation of private citizens, by leave of the court. High on Ext. Rem., sec. 591 *et seq.;* Ang. & Ames on Corp., 3d ed., 742. In this country, leave of court has also generally been held to be requisite in such cases. High on Ext. Rem., sec. 605, and cases cited. And the authorities are uniform and numerous, both in England and in this country, that where the object is to declare a forfeiture, and a dissolution of the corporation as a body politic, the government alone can institute the proceeding. High on Ext. Rem., sec. 654, and Ang. & Ames on Corp. 747, and the cases cited. The reason is that the government, having created the corporation for the purposes declared in its charter, ought to have a voice in its destruction, and may, as well as an individual, waive a broken condition of a compact. It has also been suggested, with much force, that the destruction of a corporation, or resumption of its franchises, is as much a legislative or governmental act as its creation, and that for the courts to intervene without the consent of the government would be as clear a violation of the Constitution in the one case as in the other. *Murphy* v. *Farmers' Bank,* 20 Pa. St. 415.

In the case of *The State* v. *Turk,* Mart. & Y. 286, it was unanimously hĕld by our Supreme Court that neither the ancient writ of *quo warranto* nor the information in the nature thereof was ever in force in this state, and the decision has since been followed. *Attorney-General* v. *Leaf,* 9 Humph. 755; *Boring* v. *Griffith,* 1 Heisk. 461. The point raised by the demurrer in this case must, therefore, turn upon the construction of our statutes and the application of the decisions, or the principles which underlie them, to the new mode of proceeding thereby created.

By the Code, sec. 3409 *et seq.*, it is provided that a corporation may be dissolved when it does, or omits to do, acts which amount to a forfeiture of its rights, under a bill in equity, filed either in the Circuit or Chancery Court, "in the name of the state," against the corporation. Sections 3412 and 3413 are in these words:

" Sec. 3412. The suit is brought by the attorney-general for the district or county, when directed so to do by the General Assembly, or by the governor and attorney-general of the state concurring."

" Sec. 3413. It is also brought on the information of any person, upon such person giving security for the costs of the proceedings, to be approved by the clerk of the court in which the bill is filed."

Provision is made, by the same chapter of the Code, for testing the legality of the holding of a public office, or of " any office in any corporation created by the laws of this state ;" of testing whether a public officer has done any act which works a forfeiture of his office; whether any persons act as a corporation without authority, or exercise power not conferred by law; and for bringing " the directors, managers, and officers of a corporation, or the trustees of funds given for a public or charitable purpose," to an account, etc. The statute embraces all the objects formerly obtained by the writ of *quo warranto*, or information in the nature thereof, and some others which were always cognizable by bill in equity. Precisely the same mode of redress is prescribed for every class of cases, and sections 3412 and 3413 apply to all of them indiscriminately.

These two sections are borrowed, with slight modification, from the act of 1846, ch. 55, secs. 5, 6. This act provides, section 5, that the attorney-general, on behalf of the state, may file a bill in the Chancery or Circuit Court, etc., " whenever it may be deemed proper by the Legislature of the state, or the governor and attorney-general for the time being, the latter officers concurring therein,

that judicial inquiry shall be instituted to ascertain whether any corporation, by non-user or abuse of its franchises, has incurred a forfeiture of its charter, or has been disabled by a surrender of its franchises, or any other mode." Section 6 commences thus: "When the said bill in equity shall be filed by the attorney-general, at the relation of any individual or individuals, it shall be lawful for the court, in its discretion, to require bond, with approved securities, for the relator or relators to indemnify the corporation against all costs of such bill," etc. Section 8 provides: "It shall be lawful for the attorney-general to file a bill, in the nature of a bill in equity, in the Court of Chancery or Circuit Court, as hereinbefore directed, to restrain, by injunction, any corporation from assuming or exercising any franchise not granted; to bring the directors, managers, and officers of a corporation, or the trustees of funds given for a public or charitable purpose, to an account," etc.

The language of this act leaves no doubt that the attorney-general, as the representative of the state, was a necessary party to a bill, whether it was deemed proper by the Legislature of the state, or the governor and attorney-general concurring, or was filed at the " relation of any individual." The Code, in its condensation and readjustment of these provisions, has omitted some of the repetition of the original act. It is, however, in substance the same, and when sections 3412 and 3413 are read by the light afforded by the act, their meaning and strict grammatical construction will appear at one with those of the act. " The suit," says section 3412, " is brought by the attorney-general " * * * " when directed," etc. " It is also brought," says section 3413, " on the information of any person ; " but by whom? Manifestly by the attorney-general. The section does not say that the suit shall be brought by the relators, nor by the state of Tennessee for them, but clearly implies, when taken in connection with the previous section, that it shall be by the attorney-general. The sense and

grammatical construction require that it should be read thus: "It is also brought *by the attorney-general*, on the information of any person." I am clearly of opinion, upon the ordinary rules of statutory construction, that the attorney-general of the county or district is a necessary party to any suit instituted under these provisions of the Code. *Clement* v. *Kaighn*, 2 McCart. 56.

This construction, if the language were far more doubtful, would be required by the subject-matter of such suits and the evils intended to be remedied. The evils sought to be redressed are, in general, those already provided for by the common-law writ of *quo warranto*, or the information in the nature thereof. The statute only gives a new mode of redress. But the rule is that when jurisdiction is given by statute to one court, previously vested in another, or when a new mode of redress is created for an existing right or evil, the prior jurisdiction or remedy is not destroyed. *Sylvia* v. *Covey*, 4 Yerg. 297; *Hoggat* v. *McCrory*, 1 Tenn. 8, and cases cited in head-note (new edition). New remedies for existing evils, moreover, are always construed as nearly in accord with common law and the previous course of decision as possible, of which our own rulings in proceedings by motion or attachment furnish us numerous instances. The intention of the Legislature is wisely held to be to interfere as little with the wisdom of the past as the exigency or the words used require. The uniform rulings of the long line of decisions in England and America upon proceedings by *quo warranto*, or by information in the nature thereof, are not destroyed, at one fell swoop, by a simple change of the mode in which the redress is to be effected. We may still safely look to these decisions for light in the administration of our new form of action.

All the authorities, English and American, — and their name is legion, — agree, as we have seen, that where the object is to declare the forfeiture of a charter, and the consequent dissolution of the corporation, the government

alone can institute the proceedings. And this for the ob-
vious reason that, as the government granted the franchise,
having in view the public interest, it ought to be heard as
to whether the public interest required its continuance. A
further reason is that, if there has been a forfeiture, the
court has no power, however slight the fault or extreme
the case, to censure the act, but must adjudge the inevitable
result; whereas the state may, through its attorney-general,
waive the forfeiture. *The State* v. *Merchants' Ins. & Tr.*
*Co.*, 8 Humph. 235, 255; Ang. & Ames and High, *ubi supra.*
There is nothing in the language of our statutes in conflict
with this long and unbroken line of decisions, nor in their
object, to induce our courts to ignore the reasons on which
they are based. Besides, the evils of a contrary course are
obvious. If the suit to declare a forfeiture is required to
be brought by the government, we have the guaranty of a
sworn officer that the litigation is reasonably well grounded,
and the litigation will be confined to a single suit. If indi-
viduals may use the name of the state whenever they see
proper, in such suits, any number of suits may be brought
for the same purpose, no one of them, if the informer be
changed, being pleadable in bar of another. A corporation
locally obnoxious, although beneficial to the public, might
be harassed with endless litigation. A wide door would be
thrown open to the persecutions of private malice or to
legal blackmailing. Moreover, the same mode of proceed-
ings, as we have seen, is provided for all the various objects
embraced in the chapter of the Code under consideration.
Is the right of a public officer to his office to be brought in
question by an individual, as informer, without the state,
the principal party in interest, having any voice in the
matter? Are the accounts of trustees of public charities,
and the funds they are required to administer, to be taken
and disposed of as the parties to a private suit may dictate?
Will an account taken in such a suit be conclusive upon the
state, or the parties interested in the charity? It is impos-

sible to concede, without the clearest evidence of such intention, that the Legislature designed to make such sweeping innovations on the preëxisting law. I am clearly of opinion, both on reason and authority, that the attorney-general is a necessary party to a suit like the one before us. Whether leave of court is also required before such a suit can be instituted, it is not necessary to inquire, the point not being before me.

There is nothing in the opinion of the Supreme Court in the case of *The State ex. rel.* v. *Nonconnah Turnpike Company*, delivered at the September term, 1875, at Jackson, in conflict with this conclusion. The attorney-general may have been a party to the suit, although the fact does not appear on the face of the opinion. And if in reality he was not a party, objection was not made on this ground, or passed upon by the court. The answer of the defendant was a submission to the jurisdiction of the court under the statute. Here the question is distinctly made by demurrer, and must be determined.

The demurrer must be sustained.