Overton, J.
 

 sitting alone.
 

 Upon the trial in the circuit court it appeared, that the plaintiff claimed under a grant to Hardy Murfree, dated July 10th 1788.
 

 The defendants produced a grant, under which they claimed, dated December 6th 1794, founded on an entry in John Armstrong’s office, in these words, “ No. 1822 April 23d, 1784, Robert Archibald enters 1500 acres of land in Wilson’s valley, lying between the head waters of Caney Spring, and Big Harpeth, marked I W at the head of a spring upon a white oak, being the corner of four entries, running north and west for compliment.” Ebinezar Alexander deposed that in February 1784 David Wilson, John Wilson, Robert Weakely, Joseph Kerr, Jonathan
 
 *221
 
 Drake, and himself, were out on Duck river, making locations ; among others, they made four, beginning at a tree, called by them a large white oak, marked by them I W near the head of a spring, being the same spring marked in the plat I W—that Drake who was the pilot, and acquainted with the woods, directed the location in the manner mentioned above. Drake then gave the place the name of Wilson,s valley—He was then acquainted with spring creek and caney spring creek, but did not know which was the largest. The heads of both creeks are in Wilson’s valley. The valley was formed by the projection southwardly, of the hills at the head of Big Harpeth, George Tilman states that the country near the ridge, between Wilson’s creek to the east and spring creek to the west, has for four or five years, past, since his acquaintance there, been called Wilson’s valley, making a distance of four or five miles east and west ; that the spring claimed by the defendants runs into spring creek—that caney spring creek lies west of spring creek; the spring lies on the east side of spring creek, and crossing said creek, it is more than two miles to caney spring creek—that the heads of the eastern branches of big Harpeth, are about eight miles east from said spring, and the nearest head waters, of big Harpeth about one and an half miles from the spring. Aaron M. Wilson states that he first found the white oak in the year 1806, from a view of a copy of John Armstrong’s entries, in the hands of Col. Cannon, as well as the information of E. Alexander—that he was told, Wilson’s valley lay between caney spring creek, and Wilson’s creek, or including the head waters of caney spring creek, spring creek, and Wilson’s creek from west to east; that there are high grounds north, and north east, and north west from said spring, and that there are head waters of Harpeth in different directions.
 

 Thomas Wilson became acquainted with Wilson’s valley in 1801 —his description accords with the other witnesses.
 

 Oliver Williams, proved the plat to be correct, and that caney spring creek and spring creek, were known to him by reputation in the year 1783.
 

 Robert Weakly deposed to the marks on the post oak at the spring, being present in February 1784, when
 
 they
 
 were made; his description otherwise agrees with what has been stated by the other witnesses.
 

 
 *222
 
 Evidence of two entries Nos. 1794 and 1804, copies having been produced, showed that the same white oak was called for, from the description given in the entries ; together with the copy of an entry No. 1814, which called for the head caney spring creek, in Wilson’s valley, and all of these entries are dated on the 23d April 1784.
 

 The judge charged the jury, that if the facts were true, the entry was sufficiently
 
 special;
 
 upon, which verdict was found for the defendants.
 

 It will be remarked, there was no dispute as to the white oak tree marked at the spring, nor as to the manner, in which the defendants survey was made. It will be further understood that the facts sworn to by the witnesses as detailed, were rendered more precise than was expressed, by information derived from the plat.
 

 What shall constitute a special entry is left undefined by our laws. The only act that speaks of
 
 special entries expressly,
 
 is the temporary, and local act of 1786, c. 20.— It was limited in its operation to two years, and to the western part of the state of North Carolina; but makes no attempt to define what shall be considered a special entry. As this act therefore does not materially affect the general scope of the land laws of North Carolina in relation to the specialty of entries, the court must look to other sources of information. The 5th and 11th sections of the two main pillars of the land law, viz, the acts of Nov. 1777, c. 1 and 1783 c 2, with
 
 usage
 
 must furnish the ground of decision principally. Decisions, as yet, have gone but little way in furnishing precedents. Now, these sections only require, that the enterer shall specify remarkable objects in and about the land entered, if any. The 19th section of the act of 1783 c. 2, requires surveyors to survey all entries in time, or according to number, and date. Hence, it results, that in contemplation of law, the entry must contain some call, which would enable the surveyor, on proper inquiry of the generality of those acquainted in the neighborhood, to find it. This is understood to be a statutory requisite of an entry. The idea of giving notice by prior entries, to subsequent locators, either expressly, or by necessary inference is not to be found in the land laws of North Carolina, except in the act of 1786 c 20 which as before observed is limited, and makes no part of the permanent regulations of that state. Cases may, and have occurred in watch entries were, and are so vague and undefined, as to reader
 
 *223
 
 it unjust that any subsequent one should be affected by them. Independently of the act of 1786 c. 20, there is no instance of the direct occurrence of subsequent entries to the mind of the legislature, except making provision for their claims being lost by prior entries, or claims, April 1784 c. 14 s. 7, 1787 c. 23 s. 1. October 1784 c. 19 s. 6 April 1778 c. 3 s. 2. The great distinguishable, and omnipresent solicitude of the legislature, in all its acts, was the security of oldest enterers. April 1783 c. 2, s. 18, 19, 20. April 1779 c. 6, s. 6. 1777 c. 1 s. 10. April 1778 c. 3, s. 2. October 1779 c. 4, s. 7. 1787 c. 23, s. 1. But it is said the general principles of equity will provide for subsequent locations, or entries, against those of prior date when they are vague. To what extent, is the question
 
 ?
 
 It is not the intention of the only judge now sitting, to examine this question, unaided by his associate, any further than may be sufficient to obtain light for the solution of the case before the court. The general definition heretofore given “ that there should be some call or description in an entry so
 
 notorious,
 
 as to be known to the generality of those acquainted in its neighborhood thus enabling caterers to find the place called for by reasonable industry,” in many cases leaves a difficulty where it found it. So it is in this case. Every instrument of writing must be construed, and considered as it was understood at the time it was made.
 

 Mary. Rep. 212, 233, Camp Rep. 22.
 

 The court is not informed from the records, what portion of the inhabitants of the country, knew any thing about Wilson’s valley, in the month of April, 1784, when the defendants’ entry was made, as it was then lately discovered, and it was probable but few knew of it.
 

 There might have been, at that time, but one family of Wilsons and their associate locators who knew any thing about that part of the country. In such a state of things it were natural to suppose, that inquiries would be made of them, by any person wishing to locate in the neighborhood, and hence, the surveyor and others might have ascertained, with the assistance of the calls of the entry, the spring, without imposing an unreasonable hardship to the search. Soon after this entry, in November 1785, the treaty of Hopewell was made, when the ridge near this land was made the Indian boundary, and thus it became unlawful to settle there. By the treaty of Holston in July 1791, it was made unlawful, not only to settle, but to hunt on these lands, as well as to go there on any account. From various caus
 
 *224
 
 es, this country might be said to have remained shut, against adventurers, or explorers, from about the time the entry was made, until the year 1806. In such a state of thing, it is not reasonable to suppose, that many persons were particularly acquainted with that part of the country.
 

 To what extent a knowledge of it had been obtained, we are not informed.
 
 Notoriety,
 
 or whether this entry was ascertainable by the majority of those acquainted in its neighborhood, at the time it was made, by reasonable inquiry and industry, did not seem to have been made a question by the evidence. It will be asked whose duty it was to bring the question of
 
 notoriety
 
 precisely before the court ? This question is certainly new, & it is much to be regretted there is no opportunity of consulting with the other member of the court. The decissions of Kentucky are the only recourse on the ground of judicial determinations. In that state the defendants could not obtain relief at law ; they would hare been obliged to file a bill in equity
 
 ;
 
 their statute requires that entries should be made with so much certainty that subsequent locators, may know how to take up the adjacent residuum. (
 
 [1]
 
 ) The complainant would be obliged to make out his case, and consequently prove, that his entry possessed the certainty or notoriety contemplated by law.(
 
 [2]
 
 ) “ Every plaintiff at law or complainant at equity, must the show a good title or claim before he can prevail in his suit,” (
 
 [3]
 
 ) conformably to the maxim, “
 
 actori incumbit onus prota
 
 ndi.” But proof of this notoriety is not even required of a plaintiff in equity, unless put in issue, or disputed on the past of the defendant, (
 
 [4]
 
 ) much less ought it to be required of a defendant, particularly in ejectment unless expressly put in issue. Can it be said to be done in the case bef
 
 o
 
 re the court
 
 ?
 
 We are not informed who introduced the witness on the trial, nor is it material, provided any of the witnesses had been asked, or it had come out in any way, that the spring was known or not known to a majority of those acquainted with Wilson’s valley. In ejectment as well as other actions, the plaintiff ought to make out his case ; he ought to have shown the want of notoriety of the defendants' entry, as the proof was sufficient to afford a presumption of notoriety
 
 ;
 
 unless it had appeared that the entry did not possess it. This is not such a case. For all that appears to the contrary, the entry might have possessed all the notoriety required by reason, law, or the situation of the country. It is certainly true that the court is authorised by law to judge from circumstances whether there was notoriety ; but as the court now
 
 *225
 
 consists of a single judge, and as the case is of such a character, as to leave room for presumption that the entry was special or sufficiently notorious, the court is bound to presume it was so.
 
 Ut res magis valeat quam pereat.
 
 Why may not an entry be entitled to the benignity of this maxim as well as a grant ? consistently with the principles of our statutes respecting the appropriations of vacant lands, no reason can be seen, why it should not be equally protected, having reference to the subject matter, and especially as our practice has given it a legal character, by permitting it to be available in ejectment. Two reasons are afforded in Hardin’s Reports, p. 75—First, good policy; and secondly, the land law does not authorise entries to be made on land legally appropriated by grant, which can be identified.
 
 A
 
 third reason might have been added, that the statutes of that country required a particular kind of certainty in entries. The maxims of the common law should always be at hand ; for the preservation of settled principles, their should be of frequent recurrence.
 
 Boni legislatoris est lites dirimere, et, boni judicise est lites dirimere, ne,
 
 lis ex
 
 lite oriatur.
 
 Slight objections to the validity of claims are calculated to produce law suits. If by any reasonable intendment, a grant is to be sustained, and not lost for uncertainty, it would seem to be equally just and reasonable, that the same disposition should exist with respect to entries, though in the application of the principle, there may be shades of difference, owing to the difference of the subjects on which it is brought to operate. The common law makes no difference in construction of instruments of writing, where an interest passes. Here,it has been determined that an entry passes a legal interest, so far as to be available in ejectment. In Kentucky, entries are required to possess a kind of certainty pointed out by statute. By our law they are left to construction in the same manner grants are by the common law. The practice of North Carolina and Kentucky will exemplify the difference in the characters of the two codes. In the first, scarcely an instance can be found since its laws required entries, of a dispute between a younger, and older entry. It is presumable surveyors in that state have surveyed, some younger entries out of order, by which means they obtained the oldest grants. What can be the reason of that perfect dearth of judicial precedents, in competitions of younger with older entries, for which we see so strong a disposition in this country
 
 ?
 
 It
 
 *226
 
 arises from a combination of various causes; but a strong one is, the making of a survey from which a presumption arises that the entry was sufficiently special, or the survey, or would not have surveyed it, he being authorised by law to judge for himself. After such a survey, the oldest enterer being entitled by law to the first survey, and first grant, younger enterers, it is probable, have been disposed to acquiesce, and take their lands elsewhere, or receive their purchase money back again. From the best information that can be acquired, it is believed, it would be an extremely difficult thing in that state, for a younger enterer, to sustain a case against an older one, who had obtained a survey and grant, 1787,
 
 c.
 
 23, s. 1. It is however true that there is a much more extensive cause why there are no precedents of such decisions. It is, that surveyors in North Carolina, almost universally surveyed oldest entries first, avoiding interferences, and made return of them, in consequence of which, the oldest grants were obtained agreeably to law. The requisites of law have not generally been attended to here, in those respects. As the country was situated, it was much more difficult to do so, than in North Carolina.
 

 In Kentucky, the suits sustained on the ground of the younger enterer having the best claim, are numerous. This naturally arises from the certainty in entries which their statutes require. Our statutes are of a different frame. The legislature does not point out any kind of certainty an entry should possess, and unremitted in its care and attention, that the oldest entry should obtain the best right. Besides, North Carolina directed its surveyors, that they should take care that a younger claim in being surveyed, should not interfere with an older one, Nov.
 
 1777
 
 c. 1 s. 10. 1783 c. 2 s. 19. Iredel’s Rev. Index tit: surveyor VII, with the acts referred to.
 

 But it is said, an entry is an equitable right; that when it seeks relief against a legal one, as a grant, it must show sufficient certainly to give notice on equitable principles. This is certainly a principle in equity or unquestionable authority. But we are now in a court of law, where the plaintiff must make out his case. He identifies his
 
 grant;
 
 the defendants produce a grant of a younger date, but founded on an older entry. It from the face of the entry connected with proof made by the defendants, it may, by reasonable intendment, be special for this piece of land, the
 
 *227
 
 plaintiff ought to show that it is not so, if that was the fact. If the defendants had applied to a court of equity to annul the plaintiff's grant, they would be obliged to show on equitable principles that their entry contained a reasonable degree of specialty, so much as would enable others to ascertain the place by reasonable inquiry and search. It is not the intention of the court, to say that if a younger grantee with an older entry were to file a bill in equity, that the court would not require at his hands, certainty in the entry to a reasonable intent, though opposed to a grant, vague as to description, yet identified as to boundary. If the boundaries of a grant though not special, are identified, it must hold against any subsequent entry, after registration at least. This sufficiently places subsequent enterers, on the back ground, for such a grant may be so uncertain, that no other than the surveyor and chainmen can find the boundaries. In this relation between grantees and enterers, to require of the latter strict proof of general notoriety, in the early period of a wilderness country, would be highly inequitable ; especially as by law, they were entitled to their grants, without interferences, and of which they have been deprived without any fault. That the acts of the surveyor, over whom they had no controul, should place them on this disadvantageous ground, cannot be admitted, on legal principles—even, if the specialty of an entry, were expressly put in issue, either in equity, or at law, such proof ought not to be required.
 

 When we perceive that by the law of North Carolina, the degree of specialty a location shall contain, is not pointed out ; when, we may say, all the care of the legislature has been employed, in securing the claims of prior enterers, by directing the officers of government, to survey them first, not to run the claims of subsequent entries into them, so as to produce interferences; that the secretary shall issue to them the first grant ; and not an expression, which refers to subsequent locators, except providing for their losses by older claims, in affording the remedy of removal to other lands, or having their monies refunded—this reasoning will occur with greater force.
 

 That remedy, is not a definition of specialty which a prior entry is to contain, before it shall prevail against a subsequent one as in Virginia and Kentucky ; the remedy is founded in a disposition for peace, and quiet ; it authorises the younger enterer to ask for, and receive his money;
 
 *228
 
 to have it refunded; or to remove his claim and take land in some other place. The legislature is solicitous that disputes may be avoided. The whole frame of the land law is decisive on this ground; and hence the correspondent disposition of the courts to give effect to the entry
 
 ;
 
 and that if the surveyor fails, or neglects to do his duty, in surveying it first, and avoiding to run younger claims into it; that the claim of such an enterer shall be in no worse situation, than if the surveyor had done his duty; lessen the universally received principle of equity, “ that what ought to have been done, shall be considered as done from that time.” In the exposition of the same statute respecting the precision required in entries, upon which the decision of Kentucky, is founded, Judge Roane of Virginia, delived his opinion in the case of Hunter vs. Hall, 1 Call 206-He observes " The act of 1779 prescribing the mode of locations, by the strict terms of it, presupposes a survey; for without such survey no person can strictly conform to its terms in making a location. But that act unavoidably requires, and has uniformly received a liberal construction in this respect. It is not in my power, nor is it necessary in this case, to draw a line as to the particular extent of this latitude ; but as on the one hand, a strict adherence to the terms of the act would produce infinite disputes, and litigation, so on the other, the spirit, as well as the letter of the act, require that we do not wholly disregard the land marks which it has established, nor abandon the interests of posterior locators and adventurers. This can only be done by holding locators to a reasonable degree of strictness in their entries.”
 

 The courts here have no statute requring precision in entries, which they are called on to observe. How much more forcibly then, would the disposition which suggested these remarks, operate here, than under the influence of the statute of Virginia and Kentucky above alluded to. No doubt, however, can exist, that it would be extremely unjust, and inequitable in many cases to abandon the interests of posterior locators or adventurers altogether." Had surveyors done their duty in surveying according to number and date, and avoided interference as the law contemplated, we should not have heard of disputes of this kind, as seems to be the case in North Carolina. But we know this was far otherwise. Entries were surveyed here, without observing these injunctions. Regarding on the one hand, the preference given by law, to first enterers, by
 
 *229
 
 endeavouring to place them as near as possible, in the situation, they would have been in, had the requisites of the law been complied with; we ought on the other (though not provided for by the statute) to see, that subsequent special locators, are not disappointed in their first choice, by prior entries, ungranted, and so vague, as to be incapable of being found by any reasonable means. These means are left to be collected, from the spirit of our laws, with usage under them. It is easy to perceive that the same degree of strictness, in entries, is not required here, that would be in Virginia or Kentucky. As an instance of this, an entry in Kentucky calling to adjoin the line of another tract, is not sufficient, unless it can be proved, that the line possessed notoriety, Hardin 74
 
 5.
 
 This has not been esteemed the law here, though no decision on the point is collected.
 

 Aaron M. Wilson, without any person with him, from the information derived from other entries as well as this, with that given by E. Alexander, found the spring and tree in 1806. The surveyor found it previous to 1794 when the grant issued. Six persons were together at the time the tree at the spring was marked in February 1794; the valley is proved to be only four or five miles in length, and but this spring shown to exist in that neighborhood. Under all these circumstances the court might be inclined to think, the entry was sufficiently special, either in law or equity, for the rule should be the same ; but considering the defendants are opposing the claim of the plaintiff in ejectment, if the entry required any more specialty, the plaintiff ought to have shown it. And under the circumstances of this case, as he has not done so, the presumption of law, is with the defendants, and therefore they must have judgment affirmed.
 

 [1]
 

 (1) Hardin, 191, 270.
 

 [2]
 

 (2) Hardin, 74, 191.
 

 [3]
 

 (3) Hard. 74
 

 [4]
 

 (4) Hardin, 489, 440.