## WALKER *v.* PHILLIPS.

### (*Jackson.* April 22, 1893.)

1. LAND LAW. *Special entry.*

    An entry is special that refers to "some place, natural mark, or thing," whereby persons acquainted in the neighborhood can, by the exercise of reasonable industry, ascertain the land appropriated. Hence, an entry that calls to begin on a designated corner of a well-known tract of land, and to touch upon other well-known tracts, and to run in part with their lines, is a special entry.

    Cases cited and approved: Barnett *v.* Russell, 2 Tenn., 10–21; Smith *v.* Craig, 2 Tenn., 287; Barnes *v.* Sellars, 2 Sneed, 33; Berry *v.* Wagner, 5 Lea, 564; Bleidorn *v.* Pilot Mountain Co., 89 Tenn., 201, 202.

2. SAME. *Elder special enterer's rights.*

    Unless restricted by "older claims, navigable water-courses, or the calls of his location," the elder special enterer takes, as against all younger entries, the full quantity of land called for in his entry, and embraced in his grant. Subject to the above restrictions, course and distance may be disregarded in the survey of an entry, in order to obtain the quantity of land called for. Even "older claims" impose no restriction when the entry calls to include and exclude them.

    Cases cited and approved: Hoggat *v.* McCrory, 1 Tenn., 9; Kerr *v.* Porter, 1 Tenn., 353; Murfree *v.* Logan, 2 Tenn., 220; Bickerstaff *v.* Hughlet, 2 Tenn., 270; Smith v. Craig, 2 Tenn., 300; Carter *v.* Ward, 2 Tenn., 340; Phillips *v.* Robertson, 2 Tenn., 399; Tipton *v.* Miller, 3 Yer., 423; Coldwell *v.* Watson, 6 Hum., 499; Nolen *v.* Wilson, 5 Sneed, 338.

---

### FROM DYER.

---

Appeal from Chancery Court of Dyer County. H. J. LIVINGSTON, Ch.

S. R. LATTA for Walker.

THOS. E. RICHARDSON and M. M. MARSHALL for Phillips.

CALDWELL, J. This is a bill to remove cloud from title, to stay waste, and for an account of timber alleged to have been cut upon the land in controversy.

The Chancellor dismissed the bill, and complainants appealed.

The ultimate question for decision is one of title, under certain grants from the State of Tennessee. The contestants on the one hand are the heirs of E. W. Tipton, and those on the other hand are the heirs of P. C. Ledsinger and Z. B. Phillips; the former being complainants and the latter defendants upon the record.

Complainants claim under the elder entry, elder survey, and elder grant; while defendants rely upon the younger entry, younger plat, and younger grant. Nothing else appearing, the better title would be with complainants, as a matter of course.

But the defendants assail the title of complainants, and say that their entry was void for *vagueness*, and that their survey and grant were void because of *non-conformity to the entry*.

The Tipton entry, made March 17, 1848, called for 1,000 acres, described as follows: "On the Obion River, in Dyer County, Range 10, Section 3, beginning at the north-west corner of T. M. Watson's No. ——, 200 acres; thence south with

his line to the Obion River; thence down the
river to B. F. Buck's 81 acres enlargement; thence
north with his line to the north-east corner of
the same; thence west to his north-west corner;
thence south to the river; thence down the river
to T. L. Porter's line; thence north with his line
to his north-east corner; thence west with his line
to his north-west corner; thence south with his
line to the river; thence down the river with its
meanders so far that by running north and east,
etc., to the beginning, it will include the comple-
ment, including and excluding all former entries."

The surveyor of Dyer County surveyed that
entry, on the fifteenth of August, 1857, describing
the land thus: "Beginning at the north-west corner
of an entry in the name of T. M. Watson, and
granted to McDavid and Phillips for 200 acres,
runs south with the west boundary 200 poles to
the north bank of the Obion River [to] a stake,
sycamore, ash, birch, and cottonwood pointers, their
corner; thence down the river as it meanders 40
poles to the east boundary of an entry in the
name of B. F. Buck for 81 acres; thence north
with his line and passing his north-east corner, in
all 558 poles, to a maple with cypress pointers;
thence east 358 poles to a stake and pointers;
thence south to the Obion River 444 poles, a
stake and cottonwood and willow pointers; thence
down the river with its meanders to the south-
east corner of McDavid and Phillips' survey of
200 acres; thence north with their line to their

32—8 P

north-east corner; thence west with their north line 190 poles to the beginning."

On the first of July, 1859, a grant was issued on the foregoing entry and survey, with the calls and description given in the survey; and it is under that grant that complainants here assert title to the land therein described, they being the heirs of Tipton.

Ledsinger and Phillips made their entry Nov. 15, 1850, with this description: "Beginning · at the north-east, or upper, corner of a 200 acres ·grant, in the name of Z. B. Phillips, on the north bank of the Obion River, running thence west with his north boundary line about 315 poles to his north-west corner; thence south with his west boundary line about 100 poles; thence west about 200 poles to the east boundary line of ·1,000 acres entry in the name of S. J. Hayes; thence north with his line about 380 poles to his north-east corner and continuing north to the south boundary line of a 1,500 acres entry in the name of S. J. Hayes, No. 584; thence east with his line to his south-east, or lower, corner on the bank of said river; thence down said river as it meanders to the beginning, for 4,000 acres."

This entry was never surveyed, but on the twenty-second of October, 1859, it was platted on the entry-taker's book; and on the first day of November, 1859, a grant was issued to Ledsinger and Phillips, for 2,500 acres, bounded and described as follows: "Beginning at the north-east, or upper,

corner of a 200 acres entry in the name of Z. B. Phillips, runs thence west with his line 140 poles to his north-west corner; thence north 576 poles to the south boundary line of an entry in the name of S. J. Hayes to a stake and pointers; thence east with said Hayes' south line 667 poles to his south-east corner on the Obion River; thence down the river as it meanders * * * to the south-east corner of said Phillips' 200 acre entry, a hickory; thence north 185 poles to the beginning."

The defendants, as the heirs of Ledsinger and Phillips, claim title under the latter grant.

The 200 acres mentioned in the Tipton entry and grant as the T. M. Watson entry is the same land referred to in the other entry and grant as the Z. B. Phillips entry and grant for 200 acres; the fact being that the entry of the 200 acres was made in the name of T. M. Watson, and that the grant was issued to Phillips and McDavid.

With this explanation and a reference to the calls it will be readily observed that the entry and grant of Tipton, and the entry and grant of Ledsinger and Phillips, all of them, call to begin on the same tract; those of the former beginning at the north-west corner, and those of the latter at the north-east corner. It will be further observed that after a few calls each grant departs from the exact calls of the entry upon which it is based; also that the younger entry invades the territory of the older entry, and the younger grant conflicts with the older grant.

The interference between the two grants covers about 511 acres, no part of which is inclosed or in the possession of either party.

Complainants allege that they have the title under their entry and grant, and that the entry and grant of defendants constitute a cloud upon that title which should be removed.

Nothing is better settled in our law than that an older entry and younger grant will prevail against an older grant and younger entry, the entry being the inception of the title. For a stronger reason should an older entry and older grant prevail against a younger entry and younger grant, as in this case, unless there be some fatal defect in the older entry or grant.

*First.*—The Tipton entry, under which complainants claim, is not *vague*, as contended by defendants; on the contrary, it is *special*. It begins "at the north-west corner of T. M. Watson's No. ——, 200 acres," a corner and tract well known at the time. That alone would make the entry special; it distinctly identifies the beginning corner of the land entered. But that is not all, the entry calls for corners of Buck's land and of Porter's land. Those lands were also well known in the neighborhood at the time; hence the calls for the north-east and north-west corners of each of those tracts identified other places in the line of the entry, and made it the more certain in its description of the land intended to be entered. By taking the calls of that entry, and making the

inquiries suggested thereby, a subsequent enterer could have had no insurmountable difficulty in ascertaining the location of the land entered.

Tipton, the prior enterer, described his land with certainty to a common intent. That was all the law required of him, and was all that was necessary to make his entry *special*, and give him a good inchoate title as against all subsequent enterers.

Since the case of *Barnet's Lessee* v. *Russell and others*, decided by this Court in 1808, and reported in 2 Tenn., at pages 10 to 21, it has been uniformly held that an entry is special and good, which, in some part of it, contains a reference to *some place, natural mark, or thing*, from which the land intended to be appropriated can be ascertained by reasonable industry on the part of persons acquainted in the neighborhood. *Smith* v. *The Lessee of Craig*, 2 Tenn., 287; *Barnes* v. *Sellars*, 2 Sneed, 33; *Berry* v. *Wagner*, 5 Lea, 564; *Bleidorn* v. *Pilot Mountain Co,,* 5 Pickle, 201, 202.

*Second.*—The next inquiry is with respect to Tipton's survey and grant. Do they so far depart from his entry as to render the grant void? We think not.

The Legislature and the Courts have always been solicitous that the first enterer should have the first survey and a perfect title; and to attain that end surveyors have been required to run out entries in the order made, observing the calls of each entry in succession so far as that could be done without

causing conflict. Avoidance of conflict. has been deemed of more importance than a literal observance of calls; and, as a consequence, it has been made the duty of the surveyor to depart from the calls when and so far as it may be necessary to prevent interference with prior claims; and, if in doing this he keeps reasonably within the scope of the particular entry being surveyed, his survey is good and binding upon all persons whose claims originated subsequent to that entry.

Some latitude is necessarily allowed to the surveyor. Neither his survey nor the grant issued in accordance with it can be avoided merely upon the ground that he might have surveyed the entry differently.

These propositions are deducible from our cases. *Hoggat* v. *McCrory & Gillespie*, 1 Tenn., 9; *Kerr's Lessee* v. *Porter*, *Ib.*, 353; *Murfree* v. *Logan*, 2 Tenn., 220; *Bickerstaff* v. *Hughlett*, *Ib.*, 270; *Smith* v. *Craig*, *Ib.*, 300; *Carter* v. *Ward*, *Ib.*, 340; *Phillips* v. *Robertson*, *Ib.*, 399; *Tipton* v. *Miller*, 3 Yer., 423; *Caldwell* v. *Watson*, 6 Hum., 499; *Nolen* v. *Wilson*, 5 Sneed, 338–9.

The right of an enterer to the quantity of land called for in his entry, though in an opposite direction from the beginning corner, and without reference to subsequent claims, is forcibly illustrated in the case of *Caldwell* v. *Watson*. In that case the Court said: "This petition for *mandamus* is filed by the defendant, Fleming, to compel the surveyor of Obion County to survey an entry to which the

relator is entitled, so as to include the quantity of land called for. The entry * * * beginning at the north-east corner of a tract of 629½ acres, entered in the name of Edward Harris; running south with the Harris line 226 poles to his' corner; thence west with another line of Harris' tract; thence south; thence east; thence north, etc., for complement.

"When the surveyor came to run out this entry, he was compelled to stop the first line, running south, at the end of 215 poles, because of the north boundary of Miller's survey, an older claim. The next call for west could not be run because of older claims, and for the same reason the third call for south could not be run; so that at the end of 215 poles, the termination of the first line, the surveyor was compelled to run the second line east, which terminated on the west bank of Reelfoot Lake; he then ran northwardly to a point due east from the beginning, and thence west to the beginning, thus including only 483 acres instead of 640, the quantity called for. The land north of this survey was vacant at the date of the relator's entry; but the surveyor refused to run further north than the point of beginning, because before the survey William Willis had settled on the vacant land north, and near the point at which relator's entry began.

"We are of opinion that Willis' settlement formed no obstruction to the survey of relator's entry north, so as to include the quantity called for. That

settlement was made after the entry of Fleming, who had a right to the quantity of land called for in his entry, unless he was restricted by older claims, natural boundaries, or the calls of his location. 2 Haywood & Cobb, 64, Section 3. In this case the relator was restricted by older claims, south and west, and by the lake on the east, so as to throw him upon the land north for his quantity; and as there is nothing in his entry restraining him from going north, it was the duty of the surveyor to extend his line north so as to obtain the quantity called for; for such running would have been in express compliance with the last call north, etc., for complement. The relator had a right to the quantity of land his entry calls for, which was vacant at its date, and which might be included by any proper mode of survey; and no subsequent claim could defeat that right." 6 Hum., 499, 500.

The difference between the calls of Tipton's entry and of his survey is much less than that between the calls of the entry and of the survey in the last named case, and in many of the other cases cited.

His survey and grant begin at the beginning of his entry, and pursue its calls almost literally until the north-east corner of Buck's 81 acres is reached, and then, instead of pursuing the other calls of the entry, west, south, west, north, west, south and with the meanders of the river, the survey and grant in their calls continue north a

given distance, running thence east, south, west, north, and west to the beginning, including 1,000 acres. Through the first three calls the survey and grant followed the entry strictly, and after that they complied sufficiently with the last call of the entry. From the point of departure the survey and grant ran north, east, south, west, north, and west to the beginning; while the last call of the entry was "north and east, etc., to the beginning."

From the face of the papers alone, we think the survey and grant appear to conform to the calls of the entry sufficiently to make the grant good. But there are other facts in the record tending to the same conclusion.

The evidence shows that all the lands, included in the calls of the entry and west of the western boundary of the survey and grant, except about 90 acres adjoining Buck's tract on the north, were held by older claimants when Tipton made his entry. Those lands were, therefore, properly omitted from the survey. The surveyor had no right to include them as a part of the 1,000 acres entered. If he had included and excluded them in his survey, as was done in the entry, that would have made the situation but little, if any, better for Ledsinger and Phillips; for it would still have been his duty to survey for Tipton 1,000 acres, exclusive of those lands, and in doing so he would have covered about the same land he did in fact include in his survey.

The only omission made by the surveyor, so far

as we are able to see from the record before us, was his failure to include the ninety acres of vacant land adjoining Buck on the north in his survey. Had he pursued the calls of the entry exactly, both including and excluding all prior claims, he would have included that ninety acres necessarily, and thereby might have included that much less of the land claimed by the younger enterers, Ledsinger and Phillips.

That is the most that he could have done in their favor. His failure to do it did not vitiate his survey, nor impair the validity of the grant which followed. *Carter* v. *Ward*, 2 Tenn., 340; *Hoggat* v. *McCrory*, 1 Tenn., 9.

The views expressed in this opinion and the decision made are not out of harmony with the case of *Nolen* v. *Wilson*, cited and much relied on by defendants.

In that case the Court said that an elder enterer "has a right to the quantity of land called for in his entry, unless he be restricted by older claims, navigable water-courses, or the calls of his location;" but that neither he by reason of his entry, nor the surveyor by reason of his official position, "can be allowed to depart from the entry to other lands not within its sphere, already legally appropriated by a younger enterer;" nor can an elder enterer, because he may be deprived of his land by the interference of better titles, or a navigable water-course, "be allowed to take other lands not within the scope of his entry, and already ap-

Walker *v.* Phillips.

propriated by a subsequent enterer." 5 Sneed, 338–9.

So say we in this case.

1. Tipton was entitled to the quantity of land called for in his entry, *that entry being special and he not being restricted by older claims, navigable watercourses, or the calls of his location.* Older claims were included within the calls of his entry, but he was not restricted by them, because they were excluded from the 1,000 acres entered, by the express terms of the entry itself. There was no restriction by navigable water-courses, nor by the calls of the location.

2. Tipton is not allowed *to depart from his entry and take other lands not within its scope or sphere.* On the contrary, the survey and grant are in reasonable conformity to the calls of his entry, and the land taken is entirely within its scope or sphere, as ascertained by well-recognized rules of surveying applicable to such a case.

Reverse, and enter decree for complainants.