R. S. ROUNDS et al. v. GRANDVIEW COAL & TIMBER COMPANY.

Middle Section. July 12, 1930.

Charles C. Moore and Rankin, Frazier & Roberts, all of Chattanooga, for appellants.

Brown & Spurlock and L. N. Spears, all of Chattanooga, for appellee.

DeWITT, J.   This action in ejectment involves the title to two tracts of land in Marion county.   The conflict is between grant No. 5999 to John Lea, dated March 21, 1838, based on entry 1686, dated January 16, 1838 (under which complainants claim) and grant No. 6055 to Alexander Hilliard, dated April 11, 1838, based on entry 1383, dated March 11, 1836, and grant No. 8585, to Charles Haley, dated November 23, 1841, based on entry 1676, dated November 24, 1837 (under which defendant claims).

The grants on which defendant relies are therefore younger than the grant on which complainants rely, but are based on older entries, which defendants insist are special, causing their grants to relate back to the dates of the entries and to take priority over the grant relied on by the complainants.

The tract described in complainants' grant overlaps upon the tracts described in defendant's grants.   Its interlap with the Haley tract is a long, narrow strip along the westerly portion of the Haley tract, and it covers nearly all of the land described in the Hilliard grant.   A concededly accurate map showing the location of these lands is a part of the record.

The Chancellor dismissed the bill, holding that the grants under which the defendant claims were based on special entries and that therefore the defendant has the superior title.

The Hilliard Entry, No. 1383, is as follows:

"Alexander Hilliard enters two thousand (2000) acres of land in Marion county, on top of Walden's Ridge, on the waters of Mullins Creek, adjoining a three hundred (300) acre entry of Joel Hilliard, and fifty (50) acre survey in the name of Joel Marshall, beginning on the northwest corner of said three hundred (300) acres, and running north to the top of the ridge, thence east and south for quantity to the best advantage, excluding older entries.   March 11, 1836."

Concerning this entry complainants' counsel say:

"The proof shows that the Joel Marshall survey was a well known tract of land at the time the Joel Hilliard entry was made on March 10, 1836, and complainants concede that the Joel Hilliard entry calling to begin on the northeast corner of this Joel Marshall survey and to adjoin the same, is a special entry.   It results that the call in the Alexander Hilliard entry No. 1383 to begin at the northeast corner of this Joel Hilliard

entry is a locative call. If the Alexander Hilliard entry had no subsequent restrictive calls and it had been surveyed in accordance with its calls, we would not insist that the Alexander Hilliard entry was not a special entry. But we insist, first, that the Alexander Hilliard entry No. 1383, because of its restrictive call, is rendered vague, and, second, that the entry was not surveyed so as to cover the land described in the entry. The survey departs from the calls of the entry and includes complainants' land, which the entry does not include.''

In view of the concession that the call in the Alexander Hilliard entry No. 1383, to begin at the northwest corner of the Joel Hilliard entry, is a locative call, it is unnecessary to recite in detail the calls of the Joel Hilliard and Joel Marshall entries (both having been made long prior to the Alexander Hilliard entry); for not only does the Alexander Hilliard entry call to begin at the Northwest corner of the Joel Hilliard entry, but also the Joel Hilliard entry calls to adjoin ''a fifty acre survey made in the name of Joel Marshall, being the same heretofore improved and occupied by said Marshall, beginning on the northeast corner of said fifty acre survey.'' The Joel Marshall entry, dated August 3, 1824, is conceded a special entry. It is shown to have been a well-known place in the neighborhood at the date of the Alexander Hilliard entry. The beginning corner of the Alexander Hilliard entry is definitely fixed and determined by the Joel Marshall and Joel Hilliard tracts. It afforded notice to subsequent enterers. As an initial entry, it imparted the definiteness of a locative call to the other entries connecting back and communicating with it. Smith v. Hutchinson, 104 Tenn., 394, 8 S. W., 226; McEwen v. Coal & Land Co., 125 Tenn., 694, 148 S. W., 222; Dunlap v. Sawvel, 142 Tenn., 696, 223 S. W., 142.

But it is insisted that the calls of the Alexander Hilliard entry were so vague that they did not give to the surveyor and subsequent enterers notice where the land was intended to be entered so that the surveyor might know where to find the land to survey, and enable subsequent enterers to know how to steer clear of the neighborhood of it. This requirement was adopted in the early case of Kendrick v. Dallum, 1 Tenn., 489, 498, in which it was also said:

''An entry should carry on the face of it reasonable notice to the common understanding of men acquainted in the neighborhood of it, of some call therein, so that other enterers might know when they were without its sphere. If otherwise, it would be undefined, so vague that it might as well be surveyed at one place as at another, until it be rendered certain by grant or registration. Equity would always relieve sub-

sequent enterers against such a claim, as well as against an entry surveyed obviously contrary to its meaning.''

In Wallen v. Campbell, 2 Tenn., 321, it was said:

"The calls of an entry, or some of them, should be such as to be ascertainable by reasonable industry by those acquainted in its neighborhood at the time of its date, or perhaps at the time of the institution of the adversary claim.''

As to indifferent entries, it was said in Southern Coal & Iron Co. v. Schwoon, 145 Tenn., 257, 239 S. W., 398:

"The third class of entries are those which may be available or not as the proof in the case shall make them special or vague. If the places called for are located upon the ground and are sufficiently well known to be ascertainable by reasonable industry by those acquainted in its neighborhood, then such entries are special when such proof is made, but are to be treated as vague unless these facts are made to appear.''

Calls in entries are, first, prominent, second, subordinate. Calls for natural objects, such as rivers, creeks, branches, springs, are generally prominent calls when compared with artificial ones, such as letters on trees, lines of others, etc. Weakley v. Wilson, 1 Tenn., 377. In other words, as stated in Napier's Lessee v. Simpson, 1 Tenn., 451:

"Calls in an entry are either directory or locative: the first are assistant, the latter bring the mind to the particular spot. If locative calls are not consistent with directory they should greatly preponderate as to notoriety, so that subsequent locators could be in no danger of being misled.''

It is insisted that the calls in the Alexander Hilliard entry, "In Marion county, on top of Walden's Ridge, on the waters of Mullins Creek, adjoining a three hundred acre entry of Joel Hilliard, and fifty acre survey in the name of Joel Marshall," are directory calls. Assuming that this is true, the beginning point, "the northwest corner of said three hundred acres," is fixed and definite. The call from this beginning point, "running north to the top of the ridge," imports an extension to the top of the nearest ridge north. This permits of explanation. The ridge must be located upon the ground. It may be sufficiently well known to be ascertainable by reasonable industry by those acquainted in its neighborhood. The testimony of the surveyor, Grayson, shows this to be true. He said that the ridge "is a kind of narrow ridge that runs up like a horse's back, and turns over again." He said: "There is no real level land at the top. While it is not a steep hillside, the ridge runs up going north from the Marshall place, and it is a gradual rise up for nearly half a mile, and then slopes the

other way into another prong of Mullins Creek, about the same kind of slope."

The entry then directs the surveyor to run "east and south for quantity to the best advantage." The entry calls for 2000 acres excluding older entries.

This land, lying east of the Congressional Reservation Line and north of the Tennessee River, was made open for entry by chapter 49 of the Acts of 1823 (Whitney's Land Laws of Tennessee, pp. 308 et seq.). That Act provided that "all the lands remaining vacant and unappropriated, shall remain and be subject to the entry of all and every person or persons whatsoever, each entry including not less than fifty acres, unless restricted by the line of lands already appropriated, nor more than six hundred and forty acres, in a square or oblong, unless prevented by the lines of other tracts or natural boundaries." Chapter 22, section 1, of the Acts of 1824, provided that the surveyor "shall pursue the calls of such entry, so as to include the quantity called for, and in making out the certificate of survey, he shall certify the facts, and record such survey in conformity thereto."

The Alexander Hilliard entry, beginning, as it does, at a fixed, definite point and running north to the ridge, a natural object also fixed and definite, contains requisites of a special entry. The insistence is then made that the calls restricted the survey to land lying north and east of the beginning corner in the form of an oblong or square. But the surveyor was directed to run south as well as east, to the best advantage. This meant to run the survey for complement to the best advantage of the enterer. When the land was surveyed under this entry, the Charles Haley tract on the east had already been surveyed. The surveyor must have known of the Charles Haley survey. He is presumed to have known of the provisions of the acts (Acts of North Carolina of 1717, chapter 1, section 10, and chapter 49, section 10, Acts of Tennessee of 1823), that required the surveyor to survey in square or oblong unless such lines interfered with lands already granted or surveyed. From the northwest corner of the Joel Hilliard tract he ran the line "thence north one hundred and thirty (130) poles to a black oak and pointers at the top of the ridge, then east two hundred and fifty-four (254) poles to a stake at one fork of Mullins Creek." From that point at some distance due south he actually made a small overlap upon the Haley tract. The end of this southward line of 560 poles is given as a "Spanish oak at Haley's line" —the southern line of the Haley tract. He could not go southward any further. Then he went "thence along the same (Haley's line) in part, west four hundred and eighty (480) poles to a chestnut oak, thence north thirty-three (33) degrees west, two hun-

dred and forty-four (244) poles to a hickory, at the top of said Walden's Ridge, thence along the same as it meanders north twenty-five (25) east thirty-two (32) poles to a white oak, north sixty-five (65) east sixty (60) poles to a hickory in Hiram Baker's line, thence with his line east forty-four (44) poles to a poplar, then north one hundred sixty (160) poles to Baker's corner at top of said ridge, thence with the meanders of the same North twelve (12) west eighty (80) poles to a stake, north nine (9) East, one hundred fourteen (114) poles to a stake, north thirty (30) east sixty (60) poles to a post oak, north thirteen (13) east one hundred twenty-two (122) poles to the beginning, including the aforesaid three hundred (300) acres and fifty (50) acre survey, and excluding the same."

It is claimed that the survey of the Alexander Hilliard tract excludes both the Marshall and Joel Hilliard tracts, and the result of this is to separate the Alexander Hilliard tract into two tracts. The entry excludes older entries and the survey recites, "including the aforesaid three hundred (300) acres and fifty (50) acre survey, and excluding the same." A tract of 2000 acres at this place limited by the locative calls and adjoining entries could not have been surveyed so as not to include, as well as exclude, these smaller tracts already entered. It is therefore impossible to treat this entry thus surveyed as not including, as well as excluding, these tracts; and there is no separation of the Alexander Hilliard tract into two tracts.

The insistence that the Alexander Hilliard entry gave no notice to the subsequent enterer that the lands south and west of the Marshall and Joel Hilliard tracts had been appropriated, cannot be sustained. The entry calls for a course southward and for a tract of 2000 acres excluding older entries. The duty of the surveyor was to survey it in an oblong or square as nearly as might be, taking into consideration the other claims in the neighborhood. This duty, in view of the call southward, contained the implication of a right to survey westward when an adjoining tract should be reached and thence for complement.

But it is claimed that the surveyor went beyond the directions of the entry, and that the grant No. 6055 based thereon does not relate to the date of the entry as to part of the land which is described in the survey and grant not embraced in the calls of the entry. What we have held as to the land lying southward in the tract is as to that land an answer to this proposition—for the surveyor had a right to include that land and it would have been part of an oblong. The westerly portion of the tract as surveyed is bounded by irregular lines, so that the tract is neither an oblong nor a square. The evidence is undisputed that if this land had

been laid off in a square or an oblong from the beginning point, it would have covered nearly all the land that is in controversy. In Napier, Lessee, v. Simpson, supra; it was held that if the land in dispute could have been included by running in a square or oblong, by a survey, the plaintiff ought to recover, although the survey had been made differently, "for it does not lie with the defendant to object if by such running, which is an act of the surveyor, the effect would have been the same as to him."

In Kerr v. Porter, 1 Tenn., 353, it was ruled that when older claims interfere, the surveyor is authorized, or rather constrained, to depart from the oblong or square figure, and to bound his survey on old lines until he gets his quantity.

In Walker v. Phillips, 92 Tenn., 495, 22 S. W., 338, it was said that in running surveys it is the duty of the surveyor to depart from the calls when necessary to prevent conflict with prior claims, and if he keeps reasonably within the scope of the particular entry being surveyed, his survey is conclusive on all persons whose claims originate subsequent to that entry. The court said:

"The legislature and the courts have always been solicitous that the first enterer should have the first survey and a perfect title; and to attain that end surveyors have been required to run out entries in the order made, observing the calls in each entry in succession so far as that could be done without causing conflict. Avoidance of conflict has been deemed of more importance than a literal observance of calls."

As to the Haley tract the same contentions are made—that the entry (dated November 24, 1837, surveyed November 27, 1837) contains restrictive calls which make its location so uncertain as to render the entry void; that the survey and grant do not cover the same land as that covered in the entry; that the surveyor was not authorized by any call in the entry to run more than 1000 poles west from the beginning corner and encroach about sixty poles on the land covered by the Lea grant which at that time was surveyed and granted.

The statement that at the time the Haley tract was entered and surveyed the Lea tract (Grant No. 5999) had been entered and surveyed is inaccurate. The Lea entry was not made until January 16, 1838, nearly two months after the entry of the Haley tract. So, if the Haley entry is special, the subsequent enterer had notice of the location.

The Haley entry is as follows:

"Charles Haley re-enters and enters all which amounts to four thousand nine hundred ninety-nine (4,999) acres of land lying in Marion County, State of Tennessee on the north side of Tennessee River, opposite to and below the Suck, lying on

the side and top of Walden's Ridge, beginning near Tennessee River, on a poplar, Spanish Oak, White Oak, Black Oak and a large flat rock "all marked with the letter 'H,' it being the beginning corner of James Haley, William Haley and Ward Haley five thousand (5,000) acre grant No. 4817, thence running north with said Haley line to a double poplar on the mountain near Short Creek, running thence West, thence running a northwardly course, thence running an eastwardly course, thence a southwardly course down Suck Creek to a stake at low water mark at the junction of Suck Creek and Tennessee River, thence down the Tennessee River as it meanders to a Sycamore Tree, Sweet Gum and Beech, all marked with the letter 'H,' thence a direct line to the beginning for complement.''

The survey made upon this entry is as follows:

"On the north side of the Tennessee River, on the side and top of Walden's Ridge, beginning at a Poplar and pointers, it being the beginning corner of the five thousand (5,000) acre survey made in the name of John C. Haley, between the Suck and the Boiling Pot on Tennessee River, running North with the said John C. Haley line four hundred (400) poles to a Poplar in the head of a hollow on top of said Ridge, thence West six hundred seventy-six (676) poles to a Black Oak, having crossed Mullins Creek, the northwest corner of said John C. Haley tract, then north twenty-two (22) east five hundred fifty (550) poles, to a Spruce Pine, a few poles above the mouth of Hurricane Fork of said Creek, then north forty-six (46) East, four hundred sixty (460) Poles to a stake at Suck Creek, then down the same as it meanders south eighty (80) poles, south forty-five (45) East, thirty-six (36) poles, south twenty-five (25) East, sixty (60) poles, south thirty-five (35) East twenty (20) poles, south fifty-five (55) East sixty (60) Poles, south sixty-five (65) East one hundred eighty (180) poles, south seventy (70) East, twenty-six (26) poles, south forty (40) east, two hundred sixty (260) poles, south three hundred twenty (320) poles, south ten (10) east ninety-eight (98) poles to a rock at the upper end of the bar opposite the upper end of the slope wall, at Suck Creek, thence down Tennessee River, as it meanders north seventy (70) West, one hundred eighty (180) poles, thence South twenty (20) West one hundred Twenty (120) poles, thence South eighty (80), East seventy (70) poles, to a water birch on the bank of the river in Lusk's field, then a direct line to the beginning, and deducting one hundred fifty (150) acres of prior claims.''

On the assumption that the William, Ward and James Haley tract is a separate and distinct tract from the John C. Haley tract, the complainants insist that the survey of the Charles Haley tract did not begin at the same point described as the beginning corner in the entry. The assumption is incorrect. The entry on which the grant was issued to William, Ward and James Haley was made by John C. Haley, and the grant was made to William, Ward and James Haley. The grant is dated December 1, 1836. John C. Haley entered this land on April 25, 1833. The grant recites that it was made by virtue of entry No. 1133 of that date. Consequently, the beginning points referred to in the entry and the survey of the Charles Haley tract are the same.

It is undisputed that the lines and corners of the Charles Haley tract, and the natural objects, are definite and easily ascertainable. There are locative calls in the entry—the beginning point and the mouth of Suck Creek.

A careful comparison of the survey with the entry convinces us that the survey was made in reasonable conformity with the calls of the entry. The entry calls for 4999 acres. The survey follows the courses prescribed by the entry. It is true that the survey does not call for the junction of Suck Creek and Tennessee River, in those words, as does the entry, but the survey, at this point in the calls, carries the line to "a rock at the upper end of the bar opposite the upper end of the slope wall, at Suck Creek, thence down Tennessee River as it meanders, etc." A fair interpretation is that this point is at or near the mouth of Suck Creek.

It is true that the entry does not mention Mullins Creek which is in the western part of this tract as surveyed, but it does call for "running north with said Haley's line," on the west, and this line necessarily carries it across Mullins Creek. The description in the entry justified the surveyor in including the land interlapped by the Haley and Lea grants.

The survey of the Haley tract concludes with a deduction or exclusion of 150 acres of prior claims. The complainants contend that this referred to the interlap here in question. But this is met by the fact that when the survey of the Haley tract was made the entry of the Lea tract had not been made, so that this interlap could not have been the subject of a prior claim. Furthermore, there is no evidence that this interlap amounted to 150 acres. The rule is that the effect of a grant is to confer upon the grantee the legal title to all the lands within the calls of the grant not shown to have been held at the time by superior title. Bleidorn v. Pilot Mountain C. & M. Co., 89 Tenn., 204, 15 S. W., 737. The burden is upon one attacking a grant to prove that there is a superior outstanding title to the particular land in dispute. It

devolves upon him who disputes the title of one who claims under a grant excluding older titles without definitely describing such excluded tracts, to show the existence of such older title affirmatively; otherwise the party claiming under such a grant may recover all lands within the calls of his grant. Bleidorn v. Pilot Mountain C. & M. Co., supra; Bowman v. Bowman, 3 Head, 47; Fowler v. Nixon, 7 Heisk., 719; Iron & Coal Co. v. Schwoon, 124 Tenn., 176, 135 S. W. 785; Brier Hill Collieries v. Pile, 4 Tenn. App., 468. The complainants have not carried this burden.

In his Digest, Vol. 3, p. 2135, Mr. Meigs said:

> "The great distinguishable and omnipresent solicitude of the legislature, in all its acts, was the security of its oldest enterers."

This fundamental principle runs consistently through our cases. In Berry v. Wagner, 5 Lea, 564, this rule was summarized as follows:

> "The policy of the law is earnestly in favor of securing the land to the oldest enterer when it can be reasonably ascertained."

It was long ago ruled that the surveyor is bound to regard the natural boundaries and lines of prior entries and grants, when making a survey, and he is to survey every tract as near as may be according to the calls of the entry; but although a survey might be made differently, and the calls be complied with, yet that shall not prejudice the enterer, who has no control over the surveyor. Hoggatt v. McCrory, 1 Tenn., 8; Carter v. Ward, 2 Tenn., 340; White v. Crockett, 3 Hay., 183. If the locative call is contained within any part of the survey, the entry is special, though it be at one corner; and notwithstanding that thereby a space of land is protected from future acquirers much larger than necessary for the satisfaction of the claim. McMillan v. Claxton, 4 Hay., 274; Smith v. Craig, 2 Tenn., 287; Napier v. Simpson, 1 Tenn., 448. In Phillips v. Robertson, 2 Tenn., 416, the liberal rule was plainly stated as follows:

> "The courts have uniformly decided that the elder enterer is not obliged to point out in his entry the manner in which the survey shall be made, so as to give notice to subsequent enterers. A latitude in making the survey is secured by statute; the legislature has so ordered it, and the younger enterer has no right to complain. Ita lex scripta est."

See also Blount v. Ramsey, Cooke, 372; Blakemore v. Chambles, 1 Tenn., 3; Sullivan's Lessee v. Brown, 1 Tenn., 5; Barnet's Lessee v. Russell, 2 Tenn., 18. These cases support the rule that where a surveyor has not obviously departed from the calls of an entry, or surveyed contrary to law, he is presumed to have acted accord-

220

ing to his best judgment and the enterer, who had no control over him, should not be prejudiced by his acts. The surveyor was required to follow the calls of the entry so as to keep reasonably within their scope, avoiding interference with prior claims.

This court holds that these rules were complied with in the surveys here in question; that these surveys were in reasonable conformity to the calls of the entries; that these entries were special; and therefore that the title of defendant company is superior to that relied on by the complainants. It results that the decree of the Chancery Court must be affirmed. The costs of the appeal will be adjudged against the complainants and the sureties on their appeal bond.

Faw, P. J., and Crownover, J., concur.